IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) | |
| | ) | No. 3:13-CR-91 |
| v. | ) ) | |
| MALCOLM LYNN CARPENTER, | ) ) | (VARLAN / GUYTON) |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case came before the Court on June 23, 2014, for a motion hearing on the Defendant's Motion to Strike Designation of Experts and to Exclude Expert Witnesses for United States, to Limit Expert Testimony, and/or for Continuance of Trial [Doc. 22].[1] The Defendant contends that the Court should strike the testimony of Drug Enforcement Agent (DEA) Task Force Officer (TFO) Michael Commons, the Government's expert, because the testimony is not properly expert testimony and intrudes upon the province of the jury. Assistant United States Attorney Tracy L. Stone appeared on behalf of the Government. Attorney Gerald L. Gulley, Jr., represented Defendant Carpenter, who was also present. The Court heard the arguments of the parties and took the matter under advisement. For the reasons discussed herein, the Court finds that TFO Commons may present expert testimony on the manufacture and trafficking of methamphetamine and that a hearing to apply

---

[1] On February 4, 2014, the District Judge granted [Doc. 23] this motion in part by continuing the trial and referred the remainder of the motion to the undersigned.

the test set out in Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), is not necessary in this case.

## I. POSITIONS OF THE PARTIES

The Defendant is charged[2] with conspiring to manufacture methamphetamine from August 1, 2012, to December 19, 2012 (Count One); conspiracy to manufacture methamphetamine from May 2, 2012, to July 11, 2013 (Count Two); possession of methamphetamine with intent to distribute on July 11, 2013 (Count Three), and three counts of tampering with a witness (Counts Four–Six). The Defendant argues that a law enforcement officer cannot testify as an expert on methamphetamine manufacturing and trade because such testimony is not properly expert testimony under Federal Rule of Evidence 702 and the test set out in Daubert and the related case law. The Defendant argues that, instead, TFO Commons will merely present his personal opinion, which is irrelevant to the charges and will only inflame the jury.[3]

---

[2] At the time he filed his motion, the Defendant was charged with a single count of possession of methamphetamine with intent to distribute on July 11, 2013, as now charged in Count Three. On May 6, 2014, the Government brought a First Superseding Indictment [Doc. 27], adding two conspiracy counts. On August 5, 2014, the Government brought a Second Superseding Indictment [Doc. 31], which adds three counts of tampering with a witness.

[3] On January 30, 2014, the Government filed a Notice of Expert Testimony Pursuant to Rule 16 of the Federal Rules of Criminal Procedure [Doc. 21], stating that it would call unnamed law enforcement officers to provide expert testimony as a chemist and on clandestine methamphetamine manufacturing. The Defendant initially argued that the Government's Notice was untimely and insufficient. On February 4, 2014, the District Judge continued [Doc. 23] the Defendant's trial. On April 29, the Government filed a Revised Notice of Expert Testimony Pursuant to Rule 16 of the Federal Rules of Criminal Procedure [Doc. 24]. The parties appeared for a hearing on the Defendant's motion on June 23, 2014. At that time, defense counsel stated that the Defendant no longer objected to the experts on the basis of untimely notice. He also agreed that the April 29 notice along with recent submissions by the Government provided the qualifications of the experts. Aside from those issues, defense counsel stated that his other objections to the expert testimony remained. The Court takes this to mean that the remaining

The Government responds [Doc. 25] that TFO Commons' testimony on methamphetamine manufacturing and trade is based upon his technical and specialized knowledge and will assist the jury. The Government contends that such testimony by law enforcement officers is generally accepted by the courts and is relevant to the charges in the instant case.

## II. PROPOSED EXPERT TESTIMONY

The Government's notice [Doc. 24] states that it intends to call DEA/HIDTA Task Force Officer C. Michael Commons to testify at trial. TFO Commons, who is not a fact witness in this case, has been a police officer since 2002 and a DEA TFO since 2006. TFO Commons is trained in drug enforcement and has received specific training with regard to clandestine methamphetamine operations. He has worked on numerous drug investigations and debriefed numerous persons engaged in drug trafficking to include methamphetamine cooks. The notice states that TFO Commons will provide the following testimony:

> He will testify about the operation of clandestine methamphetamine laboratories, the acquisition of components used to manufacture methamphetamine, the typical methamphetamine yields from pseudoephedrine, and the dangers of the manufacturing process. Agent Commons will testify, based on his training, education, and experience, that clandestine laboratories conservatively yield fifty percent (50%) methamphetamine from pseudoephedrine. Agent Commons will also testify about the distribution of the methamphetamine, and about the disposal of the hazardous waste generated from the manufacture of methamphetamine.

---

issues are the Defendant's objections is to the propriety and relevance of TFO Commons' proposed expert testimony. The Court finds that the Defendant's challenge to the timeliness and sufficiency of the Government's notice of the expert testimony is now moot, as the Government has supplemented its original notice well in advance of the new trial date.

> TFO Commons is expected to testify, generally, regarding the method of operation of drug dealers, the distribution quantities and values of methamphetamine, and as to how methamphetamine is made, bought, and sold in the world of drug trafficking. He will testify about the distribution of methamphetamine, generally, and specifically, that the methamphetamine possessed by the defendant in this case was consistent, in form, quantity, and packaging, with methamphetamine intended for distribution.

[Doc. 24, pp. 2-3]

At the June 23 hearing, AUSA Stone proffered that TFO Commons will testify to the unique aspects of the methamphetamine trade about which the average juror would not know. Specifically, he stated that TFO Commons will testify that individuals known as "smurfs" buy pseudoephedrine and other methamphetamine ingredients, the smurfs bring these ingredients to the methamphetamine cook, and the cook makes the methamphetamine and redistributes it to the smurfs for use and/or sale. AUSA Stone stated that TFO Commons will also explain the legal restrictions on the purchase of pseudoephedrine.

### III. ANALYSIS

The Defendant contends that the Court should exclude the proposed testimony of TFO Commons because (1) it does not constitute a proper expert opinion under Federal Rule of Evidence 702 and the test established in <u>Daubert</u> and (2) it is not relevant to the existence of a conspiracy in the instant case. The Court will examine each of these issues in turn.

Rule 702, Federal Rules of Evidence, governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if:

4

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue,
>
> (b) the testimony is based on is based upon sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The trial judge must act as a gatekeeper, admitting only that expert testimony that is relevant and reliable. Daubert, 509 U.S. at 589. With regard to scientific knowledge, the trial court must initially determine whether the reasoning or methodology used is scientifically valid and is properly applied to the facts at issue in the trial. Id. To aid the trial court in this gatekeeping role, the Supreme Court listed several key considerations in Daubert: (1) Can or has the scientific knowledge been tested, (2) Has the given theory or technique been published or the subject of peer review, (3) Does a known error rate exist, and (4) Does the theory enjoy general acceptance in the particular field. Id. at 592-94.

Although Daubert focused on the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-48 (1999); Berry v. City of Detroit, 25 F.3d 1342, 1350 (6th Cir. 1994). The trial court's objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152. Although the general principles established in Daubert apply to all experts, the

5

enumerated considerations may or may not apply to a particular non-scientific expert. Id. at 149. The trial judge enjoys broad discretion in determining whether the factors listed in Daubert reasonably measure reliability in a given case. Id. at 153. With this framework in mind, the Court turns to the issues surrounding the admissibility of TFO Commons' expert opinions.

### A. Propriety of Expert Opinion

The fact that TFO Commons is not a scientific expert but, instead, bases his expertise on his personal experience and his training as a police officer does not disqualify him. See Fed. R. Evid. 702; Kumho Tire, 526 U.S. at 151 (contemplating the use of an expert whose "expertise is based purely on experience"). One can qualify as an expert under Rule 702 on the basis of experience and training alone. 29 Alan Wright & Victor James Gold, Federal Practice and Procedure § 6273 at 192 (1997); see also United States v. Hoffman, 832 F.2d 1299, 1310 (1st Cir. 1987) (affirming that a narcotics agent with twelve years of experience in law enforcement could testify as an expert on the meaning of jargon in the cocaine trade). In the present case, TFO Commons has twelve years of law enforcement experience with specific experience in investigating drug crimes and methamphetamine trafficking. The Government's Revised Notice [Doc. 24] states that TFO Commons is trained in the various ways to manufacture methamphetamine in clandestine laboratories. He is certified in Clandestine Laboratories from the South/East Tennessee Methamphetamine Task Force and has investigated methamphetamine

6

operations.[4]  Thus, the Court finds that TFO Commons qualifies as an expert on methamphetamine manufacturing and trade based upon his training and experience.

The Defendant contends that TFO Commons' opinions are based solely upon his personal experiences rather than from generally accepted methods supported by adequate validation.  He argues that the presentation of an officer's personal opinion masquerading as expert opinion is particularly unfair because the jury will afford the officer a heightened status as an expert.  Thus, the Defendant argues that TFO Commons' opinions improperly infringe upon the jury's role in determining his guilt or innocence because he will testify about matters that the jury could determine without expert testimony.

"Courts have overwhelmingly found police officers' expert testimony admissible where it will aid the jury's understanding of an area, such as drug dealing, not within the experience of the average juror."  United States v. Lopez–Medina, 461 F.3d 724, 742 (6th Cir. 2006); United States v. Montgomery, 491 F. App'x 683, 690 (6th Cir. 2012).  "This circuit has allowed police officers to testify as expert witnesses about criminal activity since '[k]nowledge of such activity is generally "beyond the understanding of the average layman."'"  United States v. Thomas, 74 F.3d 676, 682 (1996) (quoting United States v. Pearce, 912 F.2d 159, 163 (6th Cir.1990) (internal citation omitted)), abrogated on other gnds by General Elec. Co. v. Joiner, 522 U.S. 136 (1997).  The Court finds that testimony about how methamphetamine is made and trafficked, like information on how dealers of other types of illicit drugs conduct business, is not information within the average juror's knowledge.  Thus, the Court finds that a properly qualified law enforcement officer can testify about how methamphetamine is manufactured and distributed.

---

[4] The Court infers that TFO Commons has investigated methamphetamine trafficking operations because he has conducted numerous drug investigations, including debriefing methamphetamine cooks.

7

TFO Commons should be permitted to testify about the manufacturing and trafficking of methamphetamine.

### B. RELEVANCE OF TFO COMMON'S EXPERT OPINIONS

The Defendant also argues that TFO Commons' proposed testimony on the method and operation of methamphetamine dealers; the distribution quantities and value of methamphetamine; the manner in which methamphetamine is made, bought, sold, and distributed; and the safety hazards associated with methamphetamine production and interdiction are irrelevant to whether he participated in a conspiracy to manufacture methamphetamine. Defendant argues that he is charged with conspiracy, which is essentially an agreement to break the law, and with possessing methamphetamine. He contends that TFO Commons' testimony on how methamphetamine is produced is irrelevant to whether he participated in a conspiracy or possessed methamphetamine and that such testimony will only serve to inflame the jury.

The Government responds that TFO Commons' testimony on how methamphetamine is produced, particularly how individuals known as "smurfs" provide cooks with pseudoephedrine (a component of methamphetamine) and then the cooks provide the smurfs with methamphetamine to sell or use, will illuminate the Defendant's role in the alleged conspiracies.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The Defendant is charged, in pertinent part, with violating 21 U.S.C. §§ 841 (b)(1) and 846. Section 841 makes it illegal for anyone to manufacture 500 grams or more of a controlled substance containing a detectible amount of methamphetamine. Section 846

proscribes conspiring to commit this offense. The Court finds that testimony on the manner in which methamphetamine is produced and trafficked would permit the jury to evaluate whether the Defendant's actions amounted to conspiring with others to manufacture methamphetamine. See, e.g., United States v. Harvey, No. 05–6163, 2007 WL 1339837, *5-6 (6th Cir. 2007) (holding that officer's expert testimony on use of coffee filters in manufacturing methamphetamine was relevant to whether defendant possessed distribution quantities of methamphetamine); see also United States v. Parlier, 570 F. App'x 509, 516 (6th Cir. 2014) (approving generally the expert testimony of a law enforcement officer about how methamphetamine is manufactured in a case of alleged conspiracy to manufacture methamphetamine because "[i]t is expected that the average trier of fact does not have any knowledge of the manufacture of methamphetamine"). Thus, the Court finds that TFO Commons' testimony on the way that methamphetamine is made and trafficked is relevant.

At the motion hearing, defense counsel argued that testimony on the dangers of methamphetamine manufacturing and disposal have nothing to do with whether a conspiracy to manufacture methamphetamine existed at the times alleged in the Second Superseding Indictment. Counsel also argued that such testimony would be prejudicial to him because it would improperly inflame the jury. The Government's Revised Notice of Expert Testimony Pursuant to Rule 16 of the Federal Rules of Criminal Procedure [Doc. 24] states that in addition to his testimony about how methamphetamine is made and distributed, TFO Commons will testify about "the dangers of the manufacturing process" and "about the disposal of the hazardous waste generated from the manufacture of methamphetamine." [Doc. 24, p. 2-3] The undersigned questions whether testimony about the dangerousness of producing methamphetamine and about how law enforcement subsequently disposed of hazardous waste

generated during the conspiracy is relevant to whether the Defendant participated in the conspiracy. See Parlier, 570 F. App'x at 516 (concluding that officers expert "testimony about the risks associated with various methods of manufacturing methamphetamine was not prejudicial to [d]efendant's substantial rights," although of questionable relevance to whether defendant participated in the conspiracy). However, AUSA Stone did not mention hazardous waste disposal as part of TFO Commons' testimony at the hearing. The Court concludes that although the proposed expert testimony of TFO Commons appears to be generally relevant, the relevance of testimony about the dangers in manufacturing methamphetamine and the disposal of hazardous waste generated by manufacturing methamphetamine is more properly the subject of a motion *in limine* to be determined just before or during the trial at the District Judge's discretion.

## IV. CONCLUSION

The Defendant's Motion to Strike Designation of Experts and to Exclude Expert Witnesses for United States [and/or] to Limit Expert Testimony [**Doc. 22**] is **DENIED**. The Court finds that TFO Michael Commons is qualified to present expert testimony about methamphetamine manufacturing and trade and that such testimony is relevant as set out above.

**IT IS SO ORDERED.**

ENTER:

_Bruce Guyton_
United States Magistrate Judge