IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:13-CR-91 |
| v. | ) | |
| | ) | |
| MALCOLM LYNN CARPENTER, | ) | (VARLAN / GUYTON) |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on the Defendant's Motion to Dismiss Count for Multiplicity [Doc. 41], filed on September 24, 2014. The Defendant asks the Court to dismiss Count One and/or Count Two of the Second Superseding Indictment because these counts charge him with two conspiracies to manufacture methamphetamine during an overlapping time period. He argues that convictions on both counts would violate the Double Jeopardy clause of the Fifth Amendment by punishing him twice for the same offense. The Government responds [Doc. 48] that Counts One and Two are properly charged as two separate conspiracies, which involve methamphetamine laboratories in two different counties staffed by separate groups of coconspirators. Accordingly, the Government asserts that convictions on both counts would not offend the Constitution.

The parties appeared before the undersigned for a motion hearing on October 22, 2014. Assistant United States Attorney Tracy L. Stone appeared on behalf of the Government.

Attorney Gerald L. Gulley, Jr., represented Defendant Carpenter, who was also present. The Court heard the arguments of the parties and took the matter under advisement. For the reasons discussed herein, the Court finds that the Second Superseding Indictment is not multiplicitous on its face. The Court recommends that the Defendant's Motion to Dismiss Count for Multiplicity [Doc. 41] be denied, at this time, but that the Defendant be permitted to renew his double jeopardy objection at trial, if he has cause to do so.

## I. POSITIONS OF THE PARTIES

The Defendant is charged [Doc. 31] with conspiring to manufacture methamphetamine from August 1, 2012, to December 19, 2012 (Count One); conspiracy to manufacture methamphetamine from May 2, 2012, to July 11, 2013 (Count Two); possession of methamphetamine with intent to distribute on July 11, 2013 (Count Three), and three counts of tampering with a witness (Counts Four–Six). The Defendant argues that Counts One and Two violate his Fifth Amendment right to be free from double jeopardy because they charge a single criminal offense—conspiracy to manufacture methamphetamine—occurring during an overlapping time period. Thus, he contends that convictions on both counts would punish him twice for the same offense.

The Government responds that the Second Superseding Indictment properly charges two conspiracies. It contends that the proof at trial will show that the Defendant was a methamphetamine cook at two methamphetamine laboratories located in separate counties and staffed by two unique groups of coconspirators, known as "smurfers," who gathered the necessary ingredients for methamphetamine, including pseudoephedrine. Accordingly, the

2

Government asserts that the Defendant may be convicted of both Counts One and Two without implicating double jeopardy.

## II. CHARGES AT ISSUE

Count One charges as follows:

> The Grand Jury charges that between on or about August 1, 2012, through on or about December 19, 2012, in the Eastern District of Tennessee, defendant MALCOLM LYNN CARPENTER did combine, conspire, confederate, and agree with at least one other person to knowingly, intentionally, and without authority manufacture five-hundred (500) grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(b)(1) and 841(b)(1)(A).

Count Two alleges that:

> The Grand Jury further charges that between on or about May 2, 2012, through on or about July 11, 2013, in the Eastern District of Tennessee, defendant MALCOLM LYNN CARPENTER did combine, conspire, confederate, and agree with at least one other person to knowingly, intentionally, and without authority manufacture five-hundred (500) grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(b)(1) and 841(b)(1)(A).

These charges are identical, with the exception of the time periods alleged.

## III. ANALYSIS

The Defendant argues that Count One and Two of the Second Superseding Indictment violate the Double Jeopardy clause of the Fifth Amendment because they seek to punish the same offense multiple times. He also argues that these multiplicitous counts could confuse the jury and call into question the unanimity of any convictions. The Fifth Amendment's prohibition against twice placing a defendant in jeopardy for the same offense shields the defendant from three potential harms: A "second prosecution for an offense after initial acquittal, second prosecution for an offense after an initial conviction, and 'multiple punishments for the same offense.'" United States v. Gibbons, 994 F.2d 299, 301 (6th Cir.1993) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). A multiplicitous indictment charges a single offense in multiple counts thereby infringing upon the third category, multiple punishments for a single offense. See United States v. Robinson, 651 F.2d 1188, 1194 (6th Cir.1981). Multiple, identically-worded counts raise the possibility of a conviction without the jurors' unanimous agreement on the facts for a particular count. See Valentine v. Konteh, 395 F.3d 626, 636 (6th 2005). Multiplicity in the indictment may also "unfairly suggest that more than one crime has been committed." United States v. Swafford, 512 F.3d 833, 844 (6th Cir. 2008).

The question before the Court is whether the Government has properly alleged that the Defendant participated in two conspiracies to manufacture methamphetamine, rather than a single conspiracy that took place at multiple locations. A conviction for a drug conspiracy under 18 U.S.C. § 846 requires proof of "'the existence of an agreement to violate the drug laws and that each conspirator knew of, intended to join and participated in the conspiracy.'" United States v. Pearce, 912 F.2d 159, 161 (6th Cir. 1990), cert. denied, 498 U.S. 1093 (1991) (quoting United States v. Stanley, 765 F.2d 1224, 1237 (5th Cir. 1985)). "[A] determination of whether

4

the government can prosecute on more than one conspiracy rests on whether there exists more than one agreement." United States v. Sinito, 723 F. 2d 1250, 1256 (6th Cir. 1983).

"In conspiracy prosecutions, the multiple/single conspiracy issue is determined by applying a 'totality of the circumstances' test rather than the more limited 'same evidence' test normally applied to double jeopardy reviews of substantive offenses." In re Grand Jury Proceedings, 797 F.2d 1377, 1380 (6th Cir. 1986), cert. denied Lord Elec. Co. v. U.S., 479 U.S. 1031 (1987); see also Gibbons, 994 F.2d at 301; United States v. Jabara, 644 F. 2d 574, 577 (6th Cir. 1981). Our appellate court has identified five factors to consider when assessing the totality of the circumstances:

> 1) time; 2) persons acting as co-conspirators; 3) the statutory offenses charged in the indictments; 4) the overt acts charged by the government or any other description of the offenses charged which indicates the nature and scope of the activity which the government sought to punish in each case; and 5) places where the events alleged as part of the conspiracy took place.

Sinito, 723 F.2d at 1256. Once the defendant raises a "non-frivolous double jeopardy claim," the burden shifts to the government to prove "by a preponderance of the evidence that it is not seeking to prosecute the same offense a second time." Jabara, 644 F.2d at 576.

Before turning to an evaluation of the totality of the circumstances in light of the five Sinito factors in this case, the Court first asks whether either party has presented sufficient "proof" for the Court to decide the issue. The Defendant must present a prima facie, non-frivolous claim of a double jeopardy violation before the Court can even engage in the above analysis. Here, the Defendant's prima facie case of a double jeopardy violation consists entirely of him pointing to the language of the Indictment. He presents no evidence to show that the

5

counts charge the same conspiracy and, in fact, argues that he knows nothing of the details of the two charges. Compare In re Grand Jury Proceedings, 797 F.2d at 1381 & 1386 (stating that the defendants raised circumstantial evidence in support of their theory and that the parties presented "voluminous documentary evidence"). Nevertheless, the Court finds that the identical language in Counts One and Two lends support to the Defendant's claim. Both counts allege that the Defendant and other unnamed conspirators agreed to manufacture methamphetamine in the Eastern District of Tennessee during an overlapping time period. Nothing on the face of the Second Superseding Indictment serves to distinguish the two alleged conspiracies. In the instant case, the Court finds that Defendant Carpenter has raised a non-frivolous double jeopardy issue, despite the skeletal nature of his claim.

The Court also observes that it is also faced with a paucity of evidence from the prosecution to support the totality of the circumstances analysis. The Government did not present any evidence at the October 22 hearing. See id. at 1385 (stating the "general rule" that "once a defendant has put forth a non-frivolous claim of double jeopardy, the court should hold an evidentiary hearing to resolve any factual disputes that arise"); see also Sinito, 797 F.2d at 1254 (observing that three investigating officers testified at the motion hearing). Instead, AUSA Stone proffered that the discovery reveals certain distinguishing facts about the two alleged conspiracies. In In re Grand Jury Proceedings, the court assessed a multiplicity claim prior to trial by reviewing the transcript of the grand jury proceedings to determine whether the charged offenses were multiplicitious. 797 F.2d at 1379. Here, the Indictment contains no overt acts and the Government has not provided any transcripts of the grand jury testimony. However, the Defendant did not request an evidentiary hearing on this issue, nor did he ask the Court to review the grand jury transcripts. See id. at 1386 (noting that although defendants requested an

6

evidentiary hearing in their motion, they did not ask for an evidentiary hearing at the time they argued their motion, nor did they attempt to present evidence).  In fact, counsel acknowledged at the hearing that the Court had no proof before it at this stage in the proceedings and suggested that it might be appropriate for the Court to keep this issue under advisement until after the proof is presented at trial.

Thus, the Court is left in the unfortunate position of assessing the totality of the circumstances without any proof as to what those circumstances are.  Accordingly, the undersigned cannot make any factual findings but, instead, determines whether Counts One and Two are properly separate counts, if the proof is as the Government proffers.  If the proof at trial differs from the Government's proffer, the Defendant may again object on the basis of multiplicity and request that the counts be merged.  See United States v. Throneburg, 921 F.2d 654, 657 (6th Cir. 1990) (holding that the court did not abuse its discretion in allowing prosecution of separate counts of felon in possession of a firearm and felon in possession of ammunition when, if the defendant was convicted of both, the counts would be merged at sentencing).  With this caveat, the Court looks to the five-factor test to determine whether the Government has proven that it is properly prosecuting two offenses, rather than one.

The first of the Sinito factors examines the time during which the offenses are alleged to have occurred.  723 F.2d at 1256.  The times alleged for the two conspiracies in Counts One and Two overlap.  The conspiracy charged in Count One is alleged to have begun and to have ended during the time that the conspiracy charged in Count Two was ongoing.  This complete overlap in time for the two counts suggests, but does not require, the existence of a single conspiracy.

7

The Government contends that the only person that took part in both conspiracies was the Defendant, whom the Government alleges cooked methamphetamine for two separate groups of coconspirators. In support of this contention, the Government proffers that the large amount of methamphetamine being manufactured at each methamphetamine laboratory required a large number of "smurfers" to collect the components for the methamphetamine, including the pseudoephedrine. AUSA Stone stated at the hearing that an expert witness for the Government will testify pseudoephedrine is a necessary ingredient for making methamphetamine and that strict regulations governing the purchase of medications containing pseudoephedrine permit an individual to purchase only three boxes of cold medicine per month. The Government argues that because the amount of medication containing pseudoephedrine an individual can purchase is tracked and limited, the two methamphetamine laboratories would have needed separate groups of smurfers to collect sufficient pseudoephedrine to make the amounts of methamphetamine that were being produced. The Court finds that the lack of overlap in personnel for the two methamphetamine laboratories, save for the Defendant, supports a finding that there were two conspiracies.[1]

Counts One and Two both charge violations of the same statutory offenses, which would weigh in favor of a single conspiracy. See In re Grand Jury Proceedings, 797 F.2d at 1382 (holding that charging the same statutory violations show a single conspiracy). Also, the Government has not provided any overt acts in furtherance of either conspiracy, save that law enforcement seized a methamphetamine laboratory in Roane County on December 19, 2012, and

---

[1] The Government proffers that in recorded jail telephone calls and in conversations during jail visits, the Defendant commented about each of the two methamphetamine laboratory sites. [Doc. 47, p. 2] It is not clear from this statement whether the Defendant ever spoke about the two laboratories to the same person. If he did not, then that fact would also support a finding of two conspiracies.

a separate methamphetamine laboratory in Grainger County on September 23, 2013. [See Doc. 47, p. 2] The Government points to no facts (other than location, which is discussed below) that serve to distinguish these two methamphetamine laboratories, such as the method of manufacturing methamphetamine, the way in which the laboratories were set up, the ingredients used, or steps taken to secure the laboratories. Thus, the Court cannot find that the overt acts serve to distinguish the conspiracies or to demonstrate that there were two conspiracies rather than one.

Finally, the Court looks to the location of the two alleged conspiracies. See Sinito, 723 F.2d at 1256. The Government proffers that the two methamphetamine laboratories were located in separate counties approximately one hundred miles apart. The Court finds that the rural nature of these counties along with the difficulty in amassing sufficient amounts of pseudoephedrine in two counties simultaneously given the regulatory restrictions support a finding a finding that there were separate conspiracies to manufacture methamphetamine.

Weighing the totality of the circumstances in light of the five Sinito factors, the Court finds that the Government's proffered evidence preponderates in favor of the existence of two conspiracies. Moreover, the Court finds that given the difference in locations for the two conspiracies, the jury will be able to distinguish the proof relating to each conspiracy, thereby alleviating the concern over juror confusion or a patchwork verdict. At this point in the proceedings and based upon the limited information before it, the Court recommends that the Defendant's Motion to Dismiss Count for Multiplicity [Doc. 41] be denied. If the proof at trial reveals that a single conspiracy to manufacture methamphetamine existed, then the District Judge should, upon the motion of the Defendant, merge Counts One and Two.

9

Case 3:13-cr-00091-TAV-HBG   Document 53   Filed 11/21/14   Page 9 of 10   PageID #: 169

## IV. CONCLUSION

The Court has reviewed the parties' filings and arguments along with the relevant case law and **RECOMMENDS** that the Defendant's Motion to Dismiss Count for Multiplicity [**Doc. 41**] be denied.[2] The Court also recommends that the Defendant be permitted to renew this motion after the Government's proof at trial, if he chooses to do so.

Respectfully submitted,

*Bruce Guyton*
United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).